UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | Case No. 2:11-cr-00457-JCM-CWH |
| vs. ) | **FINDINGS AND RECOMMENDATION** |
| ERIK HOLMAN, ) | |
| Defendant. ) | |

This matter is before the Court on Defendant Erik Holman's Motion to Dismiss the Indictment, or in the Alternative, for a Remedial Jury Instruction (#62), filed on July 8, 2013[1]. The Court also considered the Government's Response (#63), filed on July 24, 2013, and Defendant's Reply (#65), filed on August 1, 2013. The Court conducted an evidentiary hearing on August 28, 2013.

## BACKGROUND

On December 21, 2011, Defendant Erik Holman ("Holman") was charged by indictment for (1) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and (2) fourteen counts of Wire Fraud, in violation of 18 U.S.C. § 1343 and 1342. The Government alleges that, starting around October of 2005, John Provost ("Provost") began embezzling money from his employer, American Family Insurance Company ("AFI"). In his position as in-house legal counsel for AFI's Las Vegas Office, Provost arranged for AFI to issue payment for services that were never rendered. The Government further alleges that the service provider was Holman. Holman was a part time private investigator and Provost's live-in partner. The Government contends that Provost submitted false invoices for private investigation services to AFI, which resulted in Holman being paid for services he did not perform. AFI conducted an internal investigation and interviewed

---

[1] This motion was filed one week late, but the Government indicated not timeliness objection.

Provost and Holman in April of 2009.  Provost was terminated in May of 2009 and subsequently passed away.

The FBI began investigating Holman in July of 2009.  Holman told the FBI that, in his capacity as a private investigator, he would receive AFI investigation assignments either by telephone call or email from Provost.  Holman indicated that he would provide the requested services and submit his written reports and invoices to Provost.  Holman also specified that he would receive payment at his local post office box and deposit the payments into one of his bank accounts.  Further, Holman contends that, unbeknownst to him, Provost utilized his work laptop to create fraudulent invoices, approve them, and cause AFI to issue checks.

Provost's laptop was seized by the FBI as part of its investigation on November 12, 2009.  Special Agent Courtney Corbett ("Corbett") requested assistance from the Computer Analysis Response Team ("CART") to review the laptop on November 13, 2009.  The CART report indicates that files on Provost's laptop were password-protected or otherwise encrypted.  The encryption key provided by AFI did not unlock all of the documents.  The FBI was therefore unable to conduct a full review of the contents of the laptop.  The laptop was returned to AFI on April 6, 2010 after it was imaged by CART.

In June of 2010, in another attempt to gain access to the laptop data, Corbett contacted AFI regarding the laptop's encryption.  Corbett was advised that an employee of AFI had been able to view documents on the laptop, which had been returned to AFI, by connecting it directly to AFI's computer servers.  The security settings at AFI require a computer to be connected to their in-house network to view certain files.  Learning this, Corbett intended to serve a subpoena on AFI to obtain a copy of the documents.  Corbett testified that, on the advice of Assistant U.S. Attorney Michael Chu, who had been appointed to prosecute the case, the subpoena was never issued due to concerns about reliability of the evidence of chain of custody issues.

On August 29, 2012, Holman requested Provost's laptop from the government.  Holman was advised that the Government possessed an electronic image of the laptop's contents, but that it was encrypted.  In September of 2012, CART re-examined the contents of the laptop and attempted to use new decryption software, but was unable to view any email files.  CART Forensic Examiner

Thomas Radke ("Radke") determined that a security certificate issued by AFI's servers was required and the laptop needed to be physically connected to the network to view certain encrypted files.

On December 26, 2012, Holman submitted a subpoena requesting copies of all emails between Provost and Holman in AFI's possession from October 1, 2005 through July 31, 2009. *See* Def.'s Mot. #62, Exh. 8.  AFI responded that it had no documents responsive to the request. *See* Def.'s Mot. #62, Exh. 9.  On February 27, 2013, Holman filed a motion to compel production of the emails.  *See* Mot. (#36).  On March 11, 2013, the Court issued an Order compelling the production of the laptop files, subject to a protective order to protect AFI's proprietary information, and the image of the laptop contents and the CART analyses were provided.  *See* Minutes of Proceedings (#45).

As a result, the FBI visited AFI's headquarters to obtain a decrypted copy of the files it had previously been unable to view.  On May 17, 2013, it was determined that although there were files created to store emails on the laptop, no email messages were stored within the files.  Corbett and Radke spoke with AFI employees telephonically to determine why there were no emails.  AFI informed them that because emails are maintained on the AFI computer server a user's log-in account needs to be active to export email messages.  Given that Provost had been terminated in May of 2009, Provost's user log-on account had been de-activated prior to the FBI's receipt of the laptop in November of 2009.  Additionally, AFI indicated that its document destruction policy provides for the automatic destruction of email messages on the server within 60 to 90 days, unless otherwise advised.  *See* Govt.'s Resp. #63, Exh. 2.

On July 8, 2013, Holman moved to dismiss the indictment, or to obtain a remedial jury instruction.  Holman contends that the Government failed to preserve potentially exculpatory evidence on Provost's laptop.  He argues that the emails would have shown legitimate work communication and no fraudulent invoices created with Holman's knowledge.  Accordingly, Holman alleges that the Government acted in bad faith by failing to request that AFI preserve Provost's emails, failing to image the server along with the laptop, and failing to subpoena the documents that AFI was able to decrypt.  In response, the Government alleges that Holman has

been provided all relevant evidence to satisfy its *Brady/Giglio* obligations and it has not destroyed any evidence. Specifically, the Government argues that any of Provost's email information that may have been contained on AFI servers was never on the laptop received by the FBI in November of 2009 and it had been deleted from AFI servers in accordance with their electronic storage policy. Further, the Government contends that it had no duty to obtain the emails as they were not in its possession.

After the August 28, 2013 evidentiary hearing, the parties contacted AFI for the purpose of clarifying the document destruction policy at the Court's request. On September 6, 2013, the parties submitted a stipulation indicating that AFI's 2003 email policy was in effect at the time of the investigation. It provides that all deleted, sent, and inbox email items are purged after 60 days. Additionally, if a user creates folders to house their emails, those emails will remain in that folder until the user disposes of them or size limitations are exceeded and messages over 60 days old are purged. Also, if an AFI employee is terminated, then his entire account is deleted within 30 days of termination. Finally, AFI indicated that it did image Provost's laptop, which was the only computer Provost utilized while employed at AFI, and the image should have captured partial images of emails if they existed.

## DISCUSSION

### A.  Destruction of Evidence

Due process requires that criminal prosecutions "comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The Government must afford criminal defendants "a meaningful opportunity to present a complete defense," which requires that it must provide an accused with exculpatory evidence. *Id.* In order for destruction of such evidence to rise to the level of a constitutional violation, a defendant must make two showings. First, a defendant must demonstrate that the Government acted in bad faith, the presence or absence of which "turns on the Government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (citing *Arizona v. Youngblood*, 488 U.S. 51, 56-57 (1988)). More specifically, bad faith requires more than mere negligence or recklessness. *United States v. Flyer*, 633 F.3d 911, 916

1  (9th Cir. 2011).  Notably, a defendant must make a showing of bad faith where the evidence is only
2  potentially useful and not materially exculpatory.  *See Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th
3  Cir. 2012).  For evidence to be materially exculpatory, its exculpatory nature must be apparent.  *Id*.
4  The "mere possibility" that the lost or destroyed evidence is exculpatory does not meet the
5  materiality standard.  *United States v. Agurs*, 427 U.S. 97, 110-111 (1976).  The evidence is
6  material only if there is a reasonable probability that, had the evidence been disclosed to the
7  defense, the result of the proceeding would have been different.  A "reasonable probability" is a
8  probability sufficient to undermine confidence in the outcome.  *United States v. Bagley*, 473 U.S.
9  667, 682 (1985).  Second, a defendant must also show that the missing evidence is "of such a
10 nature that the defendant would be unable to obtain comparable evidence by other reasonably
11 available means."  *Id.* (citing *Trombetta*, 467 U.S. at 489).

12       Here, the CART report obtained in May 17, 2013 establishes there were no email messages
13 on Provost's laptop when it was obtained by the FBI in November of 2009.  CART created a mirror
14 image to ensure that the FBI preserved an exact copy of the hard drive of Provost's laptop as it
15 existed in November of 2009.  Further, AFI confirmed that it purges emails from a terminated
16 employee within 30 days of his termination and within 60 days for general folders and for
17 employee-created folders after space requirements are exceeded.  As a result, it appears as though
18 all emails from Provost were purged from the server prior to the FBI obtaining his laptop.
19 Therefore, the Court finds that the Government was never in possession of emails between Provost
20 and Holman.  Holman has not shown that the Government lost or destroyed evidence in its
21 possession in violation of Holman's due process rights.  As a result, the Court cannot find that the
22 Government acted in bad faith to destroy exculpatory evidence that could not be obtained by other
23 reasonably means.

24       **B.     Failure to Collect Evidence**

25       Although Holman has failed to demonstrate the existence of email correspondence between
26 himself and Provost on the AFI servers, the Court will consider his argument that the Government
27 had a duty to obtain such evidence from AFI.  The failure to collect and preserve evidence that is
28 potentially exculpatory may violate a defendant's due process rights if that failure was motivated by

bad faith. *Youngblood*, 488 U.S. at 58 ("Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989) ("[A] bad faith failure to collect potentially exculpatory evidence would violate the due process clause.").[2]  "A failure to collect potentially useful evidence is distinctly different than a destruction of evidence that is already extant." *United States v. Martinez-Martinez*, 369 F.3d 1076, 1087 (9th Cir. 2004).

Holman has presented no evidence to demonstrate that the alleged emails had any exculpatory value. If emails existed, they could have been either exculpatory or inculpatory. The "mere possibility" that the lost or destroyed evidence is exculpatory does not meet the materiality standard. *Agurs*, 427 U.S. at 110-111. In fact, the Government alleges that it had no indication that the laptop would not contain emails when it initially obtained it in November 2009 and, besides later representations of defense counsel, had no information regarding how important the emails were to Holman's defense.

Nevertheless, the Court will consider, for the sake of this argument, that emails existed and they were exculpatory. Ultimately, the Court finds that Holman has not demonstrated that the Government had a duty to collect alleged exculpatory emails between Provost and Holman from the AFI server. The mere fact that the laptop could have been connected to the AFI server and the user's log-on account activated to allow for the laptop to read the emails does not translate to the emails being saved on the laptop when the FBI obtained it in November of 2009. The Court cannot find that the Government had a duty to collect email evidence not saved on the hard drive of Provost's laptop.

Assuming, *arguendo*, that the Government was required under its due process obligation to collect or preserve potentially exculpatory email evidence, AFI's document destruction policy, not

---

[2] As noted previously, there is a duty to preserve only evidence "that might be expected to play a significant role in the suspect's defense," *Trombetta,* at 488, meaning "evidence that both possess[es] an exculpatory value that was apparent before the evidence was destroyed, and . . . [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489.

the bad faith of the FBI, ensured that there were no emails to collect or preserve by the time the FBI began its investigation. Under AFI's document destruction policy, any Provost emails located on AFI's servers would have been deleted 60 days after their production, and not later than June 10, 2009, 30 days after he was terminated. Because the FBI did not begin its investigation until July of 2009, the AFI server contained no emails to collect or preserve, and their destruction is not attributable to government action or inaction.[3] Therefore, the Court finds no bad faith by the Government and Holman's due process rights were not violated by the Government's failure to obtain emails from AFI.

### C. Remedial Instruction

Alternatively, Holman argues that if the Court does not find that the Government's actions arise to the level of bad faith, then a remedial jury instruction is appropriate. *See United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir. 1979) (overruled on other grounds by *United States v. W.R. Grace*, 526, F.3d 499 (9th Cir. 2008) (articulating a balancing test where the Government's conduct is weighed against the degree of prejudice to the defendant); *see also*, *Sivilla*, 714 F.3d at 1173 (noting bad faith is the wrong legal standard for a remedial jury instruction). In response, the Government argues that a remedial jury instruction is inappropriate because no evidence was lost or destroyed. Here, as discussed above, the Government neither lost nor destroyed emails when Provost's laptop was in its custody in November 2009. Accordingly, the Court finds that a remedial instruction is not warranted.

Based on the foregoing and good cause appearing therefore,

### RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant Erik Holman's Motion to Dismiss the Indictment, or in the Alternative, for a Remedial Jury Instruction, be **denied**.

### NOTICE

---

[3] Holman alleges that the Government acted in bad faith by failing to obtain a subpoena when AFI's employee viewed decrypted files when the laptop was connected to the AFI server in June of 2010. However, the Court finds that such delay is immaterial. Because the Government subsequently decrypted the laptop image in 2013 and no emails were found on it, the delay does not evince bad faith.

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 20th day of September, 2013.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**